UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA

v. 22 CR. 105 (DLC)
Plea

JAMES VELISSARIS

Defendant
------------------------------x

New York, N.Y.
November 21, 2022
3:30 p.m.

Before:

HON. DENISE L. COTE
District Judge

APPEARANCES

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
DANIEL LOSS
DANIEL TRACER
MARGARET GRAHAM
Assistant United States Attorneys

ARNOLD PORTER KAYE SCHOLER LLP
Attorneys for Defendant
PAUL J. FISHMAN
VERONICA E. CALLAHAN
MICHAEL K. KROUSE
KATHLEEN A. REILLY

(In open court; case called)

THE COURT: Is the government ready to proceed?

MR. LOSS: Yes, your Honor. Good afternoon, your Honor. Daniel Loss, joined by AUSA Daniel Tracer and Margaret Graham for the government.

THE COURT: Thank you.

Is the defendant ready to proceed?

MR. FISHMAN: We are. Paul Fishman from Arnold & Porter, with Veronica Callahan, Michael Krouse, and Kathleen Reilly.

THE COURT: Thank you so much. You may be seated.

We have a trial in this matter scheduled to begin a week from today, and I received notice -- I guess my chambers received notice -- last night that the defendant wishes to enter a plea of guilty. Is that right, Mr. Fishman?

MR. FISHMAN: It is, Judge.

THE COURT: Thank you so much.

Mr. Velissaris, please stand.

THE DEFENDANT: Yes, your Honor.

THE COURT: Before accepting your plea, I'm going to ask you certain questions to establish to my satisfaction that you are pleading guilty because you are guilty and not for some other reason. If at any time you do not understand my questions, or if you wish for a further opportunity to consult with your lawyers, will you let me know?

THE DEFENDANT: Yes, your Honor.

THE COURT: Please raise your right hand.

(Defendant sworn)

THE COURT: You are now under oath, and if you answer any of my questions falsely, you can be prosecuted for perjury. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: What is your full name?

THE DEFENDANT: James Robert Velissaris.

THE COURT: How old are you?

THE DEFENDANT: 38.

THE COURT: How far did you go in school?

THE DEFENDANT: Master's degree.

THE COURT: Have you ever been treated or hospitalized for any mental illness?

THE DEFENDANT: Yes, your Honor. Treated but not hospitalized.

THE COURT: And how recently have you been treated for mental illness?

THE DEFENDANT: I have ongoing treatment for the last 20 years.

THE COURT: For what condition?

THE DEFENDANT: Depression and PTSD.

THE COURT: Do you take any medication currently for that condition?

THE DEFENDANT: No, your Honor.

THE COURT: Have you ever?

THE DEFENDANT: No, your Honor.

THE COURT: Are you now or have you recently been under the care of a doctor or a psychiatrist?

THE DEFENDANT: Yes, your Honor.

THE COURT: For what conditions?

THE DEFENDANT: Depression and PTSD.

THE COURT: Any other condition?

THE DEFENDANT: No, your Honor.

THE COURT: In the past 24 hours, have you taken any drugs or medicine or pills?

THE DEFENDANT: No, your Honor.

THE COURT: In the past 24 hours, have you drunk any alcoholic beverages?

THE DEFENDANT: No, your Honor.

THE COURT: Is your mind clear today?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand what's happening here?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do any counsel have any doubt as to the defendant's competence to enter a plea of guilty?

MR. LOSS: No, your Honor.

MR. FISHMAN: We do not, Judge.

THE COURT: Thank you. Based on my observations of

the defendant, his responses to my questions, and his demeanor, I find he is competent to enter a plea of guilty.

Now, Mr. Velissaris, have you had a sufficient opportunity to discuss your case with your lawyers?

THE DEFENDANT: Yes, your Honor.

THE COURT: Have you had a sufficient opportunity to discuss with them the charge to which you intend to plead guilty, any defenses you have to that charge, and the consequences to you of entering a plea of guilty?

THE DEFENDANT: Yes, your Honor.

THE COURT: Are you satisfied with the representation your attorneys have given you?

THE DEFENDANT: Yes, your Honor.

THE COURT: I'm now going to explain certain constitutional rights. You will be giving up these rights if you enter a plea of guilty.

Under the Constitution and laws of the United States, you are entitled to a speedy and public trial by a jury on the charges contained in the indictment that's been filed against you. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: At that trial, you would be presumed to be innocent, and the government would be required to prove you guilty by competent evidence and beyond a reasonable doubt before you could be found guilty. You would not have to prove

that you were innocent, and a jury of 12 people would have to agree unanimously that you were guilty. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: At that trial, and at every stage of your case, you'd be entitled to be represented by a lawyer. And if you could not afford one, one would be appointed to represent you. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: During a trial, the witnesses for the government would have to come to court and testify in your presence, and your lawyers could cross-examine the witnesses for the government, object to evidence offered by the government, and if you desired, issue subpoenas, offer evidence, and compel witnesses to come to court and testify on your behalf. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: At a trial, although you have the right to testify if you chose to do so, you also have the right not to testify, and no inference or suggestion of guilt could be taken from the fact that you did not testify if that is what you chose to do. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that if you were convicted at a trial, that you would have the right to appeal

from that verdict?

THE DEFENDANT: Yes, your Honor.

THE COURT: Even at this time right now, even as you're entering this plea, you have the right to change your mind and plead not guilty and go to trial. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: If you plead guilty and I accept your plea, you're going to give up your right to a trial and all the other rights I've just described. There will be no trial, and I'll enter a judgment of guilty and sentence you based on this plea after I read whatever submissions I get from you and your lawyer and the government's lawyer, and after I read a presentence report prepared by the probation department. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: If you plead guilty, you're also going to give up your right not to incriminate yourself because I'm going to ask you today what you did, and you're going to have to describe your conduct to me. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Counsel, I need a copy of the indictment.

MR. LOSS: Your Honor, may I also approach with the updated plea agreements?

THE COURT: Sure.

So Count One I believe is the count to which you've agreed to plead guilty in satisfaction of the counts in the indictment. Count One charges you with a crime of securities fraud. It charges you with engaging in a scheme between 2018 and February of 2021. It charges that at least some of the activities in connection with this scheme occurred here in the Southern District of New York, which includes Manhattan and the Bronx, among other locations.

It charges that you willingly and willfully and knowingly used means of interstate commerce or the mails or the facilities of the national securities exchanges all in connection with the purchase and sale of securities, and in doing so engaged in manipulative and deceptive devices that violated the law.

It charges that you did so by employing schemes to defraud, also by engaging in acts or courses of business which operated as a fraud and deceit upon various persons.

And, finally, that you made untrue statements of material fact or omitted to state material facts that were necessary to be stated in order to make other statements truthful and not misleading in light of all the circumstances.

And what this specifically refers to, everything I've just described, is that you made fraudulent misrepresentations to others, including investors, in the funds of Infinity Q concerning the process by which the investment fund's

over-the-counter derivative positions were marked, falsely representing that they were marked at fair value, and also that you mismarked the value of over-the-counter derivative positions held by those investment funds in order to fraudulently inflate their value. Do you understand that's the charge against you?

THE DEFENDANT: Yes, your Honor.

THE COURT: Let me make sure you understand the penalties that apply.

This charge in Count One carries a maximum term of imprisonment of 20 years, a maximum term of supervised release of three years, a maximum fine of $5 million or twice the gross gain or loss, and a requirement that you pay a special assessment of $100. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: And there may also be requirements of forfeiture and restitution. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Supervised release means that you'd be subject to monitoring when released from prison. There are terms of supervised release with which you must comply, and if you do not comply with them, you can be returned to prison without a jury trial. You would be given no credit for any time you already spent in prison and no credit for any time you spent on post release supervision. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Are you a citizen of this country?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that if your attorney or anyone else has attempted to predict to you what your sentence will be, that their prediction could be wrong. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: No one -- not your lawyer, not the government's lawyer, no one -- can give you any assurance of what your sentence will be because I'm going to decide your sentence, but I'm not going to do it now. I'm going to wait. I'm going to wait until I get a presentence report prepared by the probation department. I'll do my own independent calculation of your sentencing guideline range, decide whether I should depart up or down from that range. I'll look at all the information that's been presented to me. I'll consider the factors set forth in a section of the law we call Section 3553(a). And only then, after that whole process, will I decide what a reasonable sentence is for you. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Even if your sentence is different from what your attorney or anyone else has told you it might be, even if it's different from what's calculated in a written plea

agreement you have with the government, you are still going to be bound by your plea of guilty and cannot withdraw your plea of guilty. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Has anyone threatened you or anyone else or forced you to plead guilty?

THE DEFENDANT: No, your Honor.

THE COURT: Now, am I right that there is a plea agreement between you and the government?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you have a copy in front of you right now?

THE DEFENDANT: I may -- yes, your Honor.

THE COURT: Does it have the date November 20 on the very first page?

THE DEFENDANT: Yes, your Honor.

THE COURT: And I know it has an attachment, but the agreement itself, does it cover six pages?

THE DEFENDANT: Yes, your Honor.

THE COURT: Is your signature on the last page?

THE DEFENDANT: Yes, your Honor.

THE COURT: What's the date next to your signature?

THE DEFENDANT: November 20, 2022.

THE COURT: Before you signed this document, did you read it with care?

THE DEFENDANT: Yes, your Honor.

THE COURT: Before you signed this document, did you discuss it with your lawyers?

THE DEFENDANT: Yes, your Honor.

THE COURT: When you signed this document, did you think you had a good understanding of its terms?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now, the parties have calculated a Sentencing Guidelines range here, and that Sentencing Guidelines range here is 235 to 240 months in prison. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: And you have also given up your right to appeal or challenge or litigate your sentence so long as I don't sentence you to more than 240 months in prison. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you have any agreement with the government about your plea or about your sentence that has been left out of this document?

THE DEFENDANT: No, your Honor.

THE COURT: So tell me in your own words what you did that makes you believe you're guilty of the crime charged in Count One.

THE DEFENDANT: May I read a statement, your Honor?

THE COURT: Yes. Before you do so, did you prepare that statement with the assistance of counsel?

THE DEFENDANT: Yes, your Honor.

THE COURT: And then did you read it with care to make sure that every statement in it is accurate?

THE DEFENDANT: Yes, your Honor.

THE COURT: You may read.

THE DEFENDANT: Between 2018 and February 2021, I made --

THE COURT: Please go slowly.

THE DEFENDANT: Sorry.

-- I made false statements of material fact to investors in the Infinity Q funds that I managed, and I did so knowingly, willfully, and with the intent to defraud. Specifically, I told investors that I was using an independent Bloomberg system to value the fund's over-the-counter derivatives. However, I was making manual adjustments in the system which increased the values of over-the-counter derivative positions that were reported. I knew that if I disclosed what I was doing, investors might have decided to redeem their investments or maybe would not have made the investments in the first place. Some of the communications with investors occurred over the phone and by email in the Southern District of New York. I acknowledge that my actions caused investors to lose money, and for this I am truly sorry.

THE COURT: And those manual adjustments, they were made with the purpose of what doing what?

THE DEFENDANT: To increase the value of the securities being held by the fund.

THE COURT: When you did what you described to me, did you understand that you were doing something wrong?

THE DEFENDANT: Yes, your Honor.

THE COURT: Did you understand that you were violating the law?

THE DEFENDANT: Yes, your Honor.

THE COURT: Give me one second here as I look at the indictment.

As I understand it, it's undisputed that the securities that the defendant just described in his allocution were traded on national exchanges? What is the connection here to the securities laws?

MR. LOSS: Yes, your Honor. One of the funds that the defendant managed was a mutual fund, which was a traded security.

THE COURT: Thank you.

And, Mr. Velissaris, the statements that you have just given me about the scheme that you employed, did that scheme affect trades in the mutual fund?

THE DEFENDANT: Yes, it affected both funds, your Honor.

THE COURT: There is a hedge fund and a mutual fund?

THE DEFENDANT: Yes, your Honor.

THE COURT: Thank you.

Does the government agree that there is a sufficient factual predicate for a plea?

MR. LOSS: Yes, your Honor.

THE COURT: Does defense counsel agree?

MR. FISHMAN: We do, Judge.

THE COURT: And, Mr. Fishman, do you know of any reason I should not accept this plea?

MR. FISHMAN: I do not, Judge.

THE COURT: Thank you.

So, Mr. Velissaris, since you acknowledge that you are in fact guilty as charged in Count One of the indictment, since I am satisfied that you know of your rights, including your right to go to trial, and that you're aware of the consequences of your plea, including the sentence that may be imposed, and since I find that you're voluntarily pleading guilty, I accept this plea to Count One.

Now, the probation department is going to want to interview you to prepare a presentence report. If you speak with them, make sure anything you say is truthful and accurate. As I said, they prepare a report, and that report is important to me in deciding what sentence to impose. You read it with care as well. If you see any errors in it, will you point them

out to your attorneys before sentence?

THE DEFENDANT: Yes, your Honor.

THE COURT: You may be seated.

Sentence is set for May 2 -- no, I'm sorry. This can't be right. I think it is March 3.

MR. FISHMAN: If I may, Judge, and I hesitate to interrupt the Court, but as the Court heard from Mr. Velissaris, he has a history of some mental health issues, and we're going to need a little bit of time to make sure that we get the appropriate psychological evaluation. So if the Court would indulge us and schedule a sentencing for the first week in April, the 3rd, 4th or 5th, if that would be acceptable to the Court, I would appreciate that very much.

THE COURT: No. It's 90 days from today, and I've given you a little bit more than that already.

So March 3 at 2:00. Defense submissions are due February 17. Government submissions are due February 24.

I believe also I have handed to me a forfeiture order that's been executed by the parties with today's date of November 21, and it consents to the entry of a money judgment in the amount of $22 million.

Mr. Velissaris, did you consent to forfeiture of that amount of money?

THE DEFENDANT: Yes, your Honor.

THE COURT: I'm signing this forfeiture order.

Mr. Fishman, will you cooperate with our probation department so your client can be interviewed within the next two weeks?

MR. FISHMAN: Absolutely, Judge.

THE COURT: Thank you.

Mr. Velissaris, you must be in this courtroom at the time and date of sentence. Failure to appear could result in separate charges for bail jumping. Do you know that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Mr. Loss, anything else we need to do?

MR. LOSS: Yes. Just two items, your Honor. First, I don't know what the Court's practice is with respect to recitation of the elements of the crime of securities fraud for the plea proceeding, but if your Honor wishes, the government is prepared to read those elements. If not, of course it's fine.

THE COURT: I certainly want you to, if you think I omitted any.

MR. LOSS: Just for purposes of belts and suspenders, your Honor, I'll go ahead and read the elements.

THE COURT: Okay. It was my intention to actually cover all the elements, but feel free.

MR. LOSS: Thank you, Judge.

So to prove that the defendant committed the crime of securities fraud in violation of Title 15, United States Code,

Section 78(j)b and 78ff and Title 17, Code of Federal Regulation 240.10b-5, the government would have to prove the following three elements beyond a reasonable doubt:

First, that in connection with the purchase or sale of securities, the defendant did any one or more of the following:

One, employed a device, scheme or artifice to defraud; or,

Two, made an untrue statement of a material fact or omitted to state a material fact, which made what was said under the circumstances misleading; or,

Three, engaged in an act, practice or course of business that operated or would operate as a fraud or deceit upon a purchaser or seller.

Second, that the defendant acted knowingly, willfully, and with the intent to defraud; that is, the intent to deceived; and,

Third, that the defendant used or caused to be used the mails or instrumentality of interstate commerce in furtherance of fraudulent conduct.

In addition to the foregoing, the government would be required to establish venue in the Southern District of New York by a preponderance of the evidence.

THE COURT: And your second point, Mr. Loss.

MR. LOSS: Yes, your Honor. Thank you.

The government would seek a modification to the terms

of pretrial release for the defendant. The government proposes adding a condition of home detention subject to location monitoring at the discretion of the pretrial services officer. We've discussed that proposal preliminarily with defendant, and we think that under the circumstances that the addition of this condition is appropriate.

THE COURT: Any objection, Mr. Fishman?

MR. FISHMAN: Not at this time, Judge.

THE COURT: Thank you.

I order that modification.

And, Mr. Loss, would you get me a written order to sign? It's obviously effective right now given my order, oral order on the record, but I think it would be helpful to probation if I could give it to them in writing as well.

MR. LOSS: Yes, we'll do that, Judge.

THE COURT: Thank you.

Anything else, Mr. Loss?

MR. LOSS: No, your Honor. Thank you.

THE COURT: Mr. Fishman, anything?

MR. FISHMAN: No, Judge. Thank you.

THE COURT: Thank you all.

(Adjourned)